ROBERT P. MORSMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65053.  Promulgated December 27, 1935.

*Edgar M. Morsman, Jr., Esq.*, for petitioner.
*E. L. Corbin, Esq.*, for the respondent.

---

OPINION.

SMITH: This proceeding involves a deficiency in petitioner's income tax for 1929 in the amount of $5,440.70. The only question in issue is whether the profit from the sale of certain securities is taxable to the petitioner individually, as the respondent has determined, or to a trust entity, as claimed by the petitioner.

On January 28, 1929, the petitioner signed an instrument purporting to be a trust agreement, reciting:

That I, Robert P. Morsman, of Omaha, Douglas County, Nebraska, do hereby declare that I hold the property hereinafter mentioned in trust for the uses and purposes hereinafter set forth, and to that end I do hereby sell, assign, transfer, and set over to myself as trustee the following described goods, bonds, credits, securities, and property, to-wit:

100 shares A. T. & T. Co.
600 shares International Utilities Pfd. B.

To HAVE AND TO HOLD said goods, bonds, credits, securities, and property unto said Robert P. Morsman, his successors and assigns, but in trust, and for the uses and purposes and upon the conditions as follows, to-wit:

(1) The United States Trust Company shall be the successor in trust. At any time prior to January 1, 1939, the trustee, Robert P. Morsman, may turn over to the United States Trust Company the trust funds and property, and thereupon said United States Trust Company shall become trustee hereunder, and said Robert P. Morsman shall cease to be trustee. On January 1, 1939, it shall be the duty of said Robert P. Morsman to turn over the trust fund and property to the United States Trust Company as successor in trust to the said Robert P. Morsman.

(2) The creator of this trust may, from time to time, turn over to the trustee additional funds and property and thereupon such additional funds and property shall be and become part of the trust hereby created, subject to all the terms and conditions hereof.

(3) The income of said fund and property shall remain undistributed up to January 1, 1934, and shall, up to said date, be added to and become a part of the principal of said fund.

(4) The trustee shall have full power and authority to manage, handle, control, sell, invest, and reinvest said trust property in the manner in which the trustee shall deem wise and proper.

(5) After January 1, 1934, the income from said property and funds shall be paid to Robert P. Morsman during the remainder of his natural life.

(6) In the event Robert P. Morsman dies leaving issue, then said income shall be divided annually among such issue, children of a deceased child to take the share such deceased child would have taken had such a child not died.

(7) In the event Robert P. Morsman dies leaving no issue surviving him, then upon his death said trust shall cease and terminate. Should Robert P. Morsman die leaving issue surviving him, then said trust shall cease and terminate twenty years after his death.

(8) Upon the termination of said trust, the trust estate shall be divided between the issue of Robert P. Morsman, if there be any then living, children of a deceased child to take the same share such deceased child would have taken had such child not died. If, at the termination of said trust, there be

no issue of said Robert P. Morsman then living, and said Robert P. Morsman dies a married man, then said trust estate shall be turned over to the widow of said Robert P. Morsman, if there be one then living, and, if not, then said trust estate shall be distributed among the heirs of Robert P. Morsman, heirs to be ascertained according to the laws of the state of Nebraska.

The instrument was prepared by petitioner's brother, Edgar M. Morsman, Jr., a lawyer, a short time before the petitioner signed it. The petitioner was then in bad health.

At the time of signing the instrument the petitioner endorsed the securities mentioned therein and placed them with the instrument in his safe deposit box at the United States Trust Co., Omaha, Nebraska. Thereafter, and pursuant to the provisions of paragraph (2) of the above instrument, the petitioner added to the securities above referred to 100 shares of American Telephone & Telegraph Co. stock.

On or about February 4, 1929, the petitioner sold 100 shares of the American Telephone & Telegraph Co. stock set apart as above indicated, for a consideration of $22,166. With the proceeds of this sale he purchased a cashier's check payable to himself as trustee, which he placed in his safe deposit box. On or about February 8, 1929, the petitioner added to the so called trust fund his personal check for $2,371.78, made out to himself as trustee. On or about February 7, 1929, the petitioner sold the 600 shares of International Utilities preferred B stock for $11,901, and on or about May 1, 1929, sold the remaining 100 shares of American Telephone & Telegraph Co. stock for $23,291.

Soon after the above mentioned sales of securities were made the petitioner, pursuant to the provisions of paragraph (1) of the above instrument, reinvested the proceeds in mortgages, bonds, and other securities, and on May 3, 1929, assigned the entire fund, amounting to $59,337, to the United States Trust Co. as trustee.

In his individual income tax return for 1929, the petitioner did not report any profit on the sales of the securities mentioned above. The profit on these sales was, however, reported in a return filed by the United States Trust Co. as trustee. The respondent has determined that the profits on the sales of the shares in question are taxable to the petitioner.

In his petition the petitioner alleged error with respect to respondent's determination of the amount of the profit derived from the sales of the securities in question, but now waives such allegation of error, leaving for our determination only the question whether the petitioner is taxable upon the profits arising from the sales of the securities.

The provisions of the Revenue Act of 1928 bearing upon the question presented are as follows:

SEC. 161. IMPOSITION OF TAX.

(a) *Application of tax.*—The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

(2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct;

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; and

(4) Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated.

(b) *Computation and payment.*—The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary, except as provided in section 166 (relating to revocable trusts) and section 167 (relating to income for benefit of the grantor). For return made by beneficiary, see section 143.

SEC. 166. REVOCABLE TRUSTS.

Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, or where any part of the income of a trust is or may be applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (n), relating to the so-called " charitable contribution " deduction), such part of the income of the trust shall be included in computing the net income of the grantor.

It is the contention of the respondent that:

* * * until the trust property was delivered and turned over to the United States Trust Co. as successor in trust under the provisions of paragraph 1 of the trust instrument, which occurred on May 3, 1929, the petitioner had complete control and power of revocation, and that the income from the said trust property is properly taxable to him. While it may be true that the trust instrument in itself reserves to the grantor no specific power of revocation, or power to reinvest in himself title to the corpus of the trust, it cannot truly be said that he did not have such power. The petitioner, Robert P. Morsman, was the grantor and creator of the trust, the provisions of which make him also trustee and beneficiary. He also retained a reversionary interest as provided

in paragraph 8 of the said trust instrument. During the period from January 28, 1929, to May 3, 1929, the petitioner was in physical possession of the trust instrument. He was in physical possession of the property composing the trust. He was the only beneficiary to the trust. There were no other interested parties. Clearly, this gave him absolute control to reinvest in himself title to the corpus of the trust or to destroy the trust at will. All that would have been necessary for him to have done during this period would be to have torn up the trust instrument or have revoked the same without incurring opposition from anyone or without involving the interest of third parties, even though the document itself reserved to the grantor no specific authority to revoke the same.

There is no question but that one may declare himself trustee for another or others and thus create a legal trust. *Adams* v. *Adams*, 21 Wall. 185; *Samuels* v. *Drew & Co.*, 296 Fed. 882; *Rose* v. *Commissioner*, 65 Fed. (2d) 616. It is essential to a valid private trust, however, that there be a *cestui que trust* distinct from the trustee. A trust can not exist where the legal and beneficial interests are in the same person and where there is no separation of the legal and equitable estates. The rule is stated in Corpus Juris, vol. 65, p. 572, as follows:

c. *Beneficiary of Trust.* While it has been stated very broadly and with great positiveness that the same person cannot be both trustee and beneficiary, this doctrine results from that of merger of estates rather than from any incompatibility of interest between the trustee and cestui que trust. It is undoubtedly true that the same person cannot be at the same time sole trustee and sole beneficiary of the same identical interest; or, in other words, that a trust cannot exist where the legal and beneficial interests are in the same person. But the prohibition against the dual relationship is directed against the same interest, and a cestui que trust is not absolutely prohibited from occupying the office of trustee, especially where he is only one of several trustees, or where he is a trustee for himself and others, and as long as the trustee is not the sole beneficiary, it is no objection to the validity of a trust that the trustee named is one of the beneficiaries. It is, however, repugnant to the general theory of trusts that a trustee who is also a beneficiary should be given the right to expend the entire trust in accordance with his own judgment and for his own use and enjoyment.

In *Young* v. *Mercantile Trust Co.*, 140 Fed. 61; affd., 145 Fed. 39, the "essential elements" of a trust are said to be "a beneficiary, a trustee other than the beneficiary, the subject-matter of the trust relations, and surrender of the property and transfer of the title to the trustee." It was also said in *Des Moines Terminal Co.* v. *Des Moines Union Ry. Co.*, 52 Fed. (2d) 616, 633:

It is insisted that under the decree of the court both the legal and the beneficial interest are in the Terminal Company, and hence that no trust is created. That a trust cannot exist where the legal and beneficial interest are in the same party is settled doctrine. 26 Ruling Case Law, 1186. * * *

It has been held that a testamentary trust was not invalid where the testator's husband was a beneficiary and one of the trustees "for the reason that he is not the sole trustee." See *In re Arnolt's Estate*,

217 N. Y. S. 323. Also, it was held in *Nelson* v. *Meade*, 149 Atl. 626, 629, that:

It is no objection to the validity of a trust that the trustee named is one of the beneficiaries, *Burbach* v. *Burbach*, 217 Ill. 547, 75 N. E. 519; *Summers* v. *Higley*, 191 Ill. 193, 60 N. E. 969, but it is inconsistent with and repugnant to the general theory of trusts that the trustee who is also a beneficiary should be given the right to expend the entire trust fund in accordance with her own judgment and discretion, and for her own use and enjoyment.

A leading case on the subject is *In re Fox's Estate*, 264 Pa. 478; 107 Atl. 863, where the court said:

Cestuis que trust are not, as such incapacitated from being trustees for themselves and others; but, as a general rule, they are not altogether fit persons for the office, in consequence of the probability of a conflict between their interest and their duty. Lewin on Trusts, vol. 1, § 40; Perry on Trusts, §§ 59 and 297. But it has been stated with great positiveness that the same person cannot be both trustee and beneficiary. Where the trustee is made beneficiary of the same estate, both in respect to its quality and quantity, the inevitable result is that the equitable is merged into the legal so that the latter alone remains. Such was *Hahn* v. *Hutchinson*, 159 Pa. 133, 28 Atl. 167. This doctrine results more from the merger than from any incompatibility of interest between the trustee and cestui que trust. * * * But the prohibition against the dual relationship is directed against the same interest, and therefore a cestui que trust is not absolutely excluded from occupying the office of trustee, especially where he is one of several trustees, or where he is trustee for himself and others.

See also *Clark* v. *Sisters of Society of The Holy Child Jesus*, 82 Neb. 85; 117 N. W. 107.

The rule established by the above cited cases is applicable here. At least until May 3, 1929, the trustee and the *cestui que trust* were one and the same person. The trust instrument of itself did not result in the creation of a legal trust. The petitioner's motives in the undertaking are of no consequence, although he admits that the question of tax liability on the sale of the securities involved was considered by him in his decision to create a trust. The trust, if any existed, did not arise until after the sale of the securities, when the petitioner transferred the funds to the United States Trust Co. as trustee. Cf. *Stoddard* v. *Eaton*, 22 Fed. (2d) 184; *N. H. Boynton*, 11 B. T. A. 1352; *Benjamin F. Wollman*, 31 B. T. A. 37.

Since no valid trust existed at the time the securities were sold, it is unnecessary to comment on the respondent's further contention that the trust, if any existed, was revocable by the petitioner up to May 3, 1929, and that the income in question is therefore taxable to the petitioner.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

LEECH dissents.