*Decision will be entered under Rule 50.*

LAURA M. HUTCHINSON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT
MELVIN J. HUTCHINSON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2601–65, 2602–65. Filed March 29, 1967.

*Pell Hollingshead* and *Roderick K. Daane*, for the petitioners.
*Charles H. Powers*, for the respondent.

TANNENWALD, *Judge:* Respondent determined deficiencies in gift tax for the years and in the amounts as follows:

| Petitioner | Year | Deficiency |
|---|---|---|
| Laura M. Hutchinson | 1960 | $26, 523. 92 |
|  | 1961 | 2, 853. 27 |
| Melvin J. Hutchinson | 1960 | 26, 523. 92 |
|  | 1961 | 2, 853. 27 |

The only issue is whether certain gifts were, in part, future interests within the meaning of section 2503.[1]

### FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.

Melvin J. and Laura M. Hutchinson are husband and wife and had their legal residence in Alma, Mich., at the time of the filing of the petitions herein. Each filed gift tax returns for 1960 and 1961 with the district director of internal revenue, Detroit, Mich., Laura consented to having Melvin's gifts considered as having been made one-half by her and accordingly signed Melvin's returns as a consenting spouse. Melvin similarly consented to Laura's gifts.

---

[1] All references are to the Internal Revenue Code of 1954.

Melvin is the president and the principal stockholder of Detroiter Mobile Homes, Inc. (hereinafter referred to as Detroiter), a company engaged in the manufacture and sale of mobile homes. In 1960, Melvin decided to reward certain key employees and friends, some of whom had helped to get him started in the business. He wanted to give them stock in Detroiter. It was decided to delay the gifts until completion of a public offering of Detroiter's common stock. The offering, through underwriters, was registered with the Securities and Exchange Commission (hereinafter referred to as SEC). On October 27, 1960, Detroiter sold 250,000 shares of its common stock in a public offering and thereafter the stock was publicly traded over the counter.

Once the public offering was completed, Melvin began working out the details of the proposed gifts with J. David Sullivan, the company's and his personal attorney, and Michael M. Wild, the company's and his personal CPA. Melvin insisted that he wanted to make gifts of stock in the maximum amount allowable without his incurring a gift tax or the donees' incurring an income tax.

Sullivan advised Melvin that, because of the amount of stock involved and because of SEC regulations, the donees would have to sign letters of investment or else a new registration statement would be necessary. Melvin objected to requiring letters of investment from the donees and asked Sullivan to devise an alternative.

Sullivan then drafted a proposed agreement of trust, placing title to the stock in Manufacturers National Bank as trustee. Each beneficiary would have the income for 10 years, after which the corpus would be transferred to him. Melvin rejected this procedure because it placed title to the stock in the bank, and did not accomplish his objective, the gifts to go directly to the donees and the stock to be registered in their names.

Sullivan then redrafted the agreement. The revised version provided as follows:

### AGREEMENT OF TRUST

THIS AGREEMENT OF TRUST made this 5th day of December 1960 by and between MELVIN J. HUTCHINSON and LAURA M. HUTCHINSON, husband and wife, of City of Alma, State of Michigan, as "Grantors" and the MANUFACTURERS NATIONAL BANK OF DETROIT, a national banking association with principal office in Detroit, Michigan, as "Trustee."

Now, THEREFORE, WITNESSETH:

### CREATION OF TRUST

In consideration of the mutual covenants herein contained, the Grantors by these presents do hereby irrevocably grant, assign, convey, transfer, set over and deliver to the Trustee the shares of corporate stock, more particularly described

in Schedule "A" attached hereto and made a part hereof, to hold said shares, together with any other property, acceptable to the Trustee, which may be added to and included by the Grantors, or any other person, in any schedule attached hereto and made a part hereof, "Shares of corporate stock" as used in this agreement means all shares of common stock of any corporation originally or at any subsequent time becoming part of the corpus of this trust and also all securities or rights received as the result of any recapitalization, reorganization, liquidation or other change in the capital structure of such corporations and their respective successors and assigns. IN TRUST, NEVERTHELESS, for the following uses and purposes, subject to the terms, conditions, powers and agreements, set forth.

To Wit:—

## ARTICLE I

The Trustee agrees to hold said certificates of stock and any other property in said trust, and shall not permit certificates to be delivered to said beneficiary or beneficiaries until the terms of this trust shall be fully complied with, however, no condition shall be created that shall cause said trustee to assume or be legally liable for any acts required under said trust.

## ARTICLE II

### Distribution

1. *Beneficiaries.*—Trust A herein created shall be held by the trustee for the benefit of [name of beneficiary], and Trust B—for the benefit of [name of beneficiary] of [address of beneficiary].

2. *Terms of the Trusts.*—Each trust herein created shall continue for a period of ten years, and shall terminate the first day of the first month following the tenth (10th) anniversary of the creation of said trust:

PROVIDED, HOWEVER, that in the event a beneficiary shall be a minor then said trust shall continue until said beneficiary shall have attained his or her twenty-first (21st) birthday. Death of a beneficiary shall not terminate the trust but shall permit trustee to cause stock certificates to be re-issued in the name of the estate of the deceased, or any heirs-at-law of said deceased. Trustee may deliver, free from said trust, all or a portion of the stock held in said trust under certain conditions such as illness and dire need, when in the discretion of the trustee such need has arisen. Said trust shall not be subject to sale, transfer or pledging for the purposes of a loan by the beneficiary or beneficiaries. Nor shall said trust be subject to attachment, lien or Court order for debts or obligations of the beneficiary. Any attempt at assignment by any beneficiary herein, either in whole or in part shall be null and void and of no effect and the Trustee hereunder is hereby directed to ignore any such assignment and if necessary to carry out this purpose, to withhold income or principal until said assignment is withdrawn. Said trust at the discretion of the beneficiary may be continued for five (5) additional years or series of five (5) year periods. Should said trust be continued for additional years, all conditions shall govern the operation and use of said trust.

3. *Income Distribution.*—During the continuance of each trust, inasmuch as said stock shall be in the name of the beneficiary, cash dividends shall be paid directly to said beneficiary. The beneficiary shall have the right to and shall vote said stock so held in his or her name during the period of this trust.

4. *Corpus Distribution.*—Upon the termination of each trust the trustee shall distribute all certificates and property of said trust to said respective beneficiary, or in the case of the death of said beneficiary to his estate or heirs-at-law. The

trustee is specifically relieved of any liability for loss that may occur by trustees retaining said stock certificates which form the corpus of this trust.

### ARTICLE III

#### *Compensation of Trustee*

The trustee shall receive reasonable compensation for its services. Trustee shall in addition be compensated for any additional services rendered, should the same be required over and above the duties above provided. The beneficiary shall be obligated to pay said compensation and the failure to so do, trustee shall have a lien upon said trust for said compensation. Said beneficiary shall not be entitled to said trust until the same shall be paid in full.

IN WITNESS WHEREOF, the parties have hereto set their hands and seals as of the day and year first above written to this agreement of trust, consisting of three (3) typewritten pages, this page included.

MELVIN J. HUTCHINSON

Witnessed by:

_____

LAURA M. HUTCHINSON

Attest:

MANUFACTURERS NATIONAL
BANK OF DETROIT, TRUSTEE

By:

_____

### Schedule A

500 Shares of Common Stock of Detroiter Mobile Homes, Inc. for [name of beneficiary]. 500 Shares of Common Stock of Detroiter Mobile Homes, Inc. for [name of beneficiary], which shall be issued on one certificate of 1000 Shares as follows:

[names of beneficiaries]    J. T. W. R. S.

Melvin accepted the revised version. He gave Sullivan a list of the intended donees and the amount of stock to be transferred to each. Forty-two separate agreements, one for each gift, were drawn up. Twenty of these contained joint donees, husband and wife, while twenty-two contained single donees.

On December 5, 1960, petitioners and the bank's representative signed the 42 agreements. At the same time, 31,000 shares of Melvin's stock were transferred into 42 separate certificates, 1 certificate for each donee or pair of joint donees. In the case of husband and wife, the certificates were issued to them as joint tenants with right of survivorship. Nineteen of the joint certificates were for 1,000 shares

while the 20th was for 500 shares. Twenty-one of the single certificates were for 500 shares while the 22d was for 1,000 shares. On the date of transfer, the fair market value was $12 per share.

As specified by the agreements, the certificates were issued in the names of the donees (including donees who were minors) and were delivered to the bank to hold.

Each of the donees was informed of his respective gift and received a copy of the agreement pertaining to him. None of the certificates contained any legend referring to the agreement.

With the exception of the certificate issued to petitioners' daughter and two certificates issued to the sons of Sullivan, all of the donees were either employees or the spouses of employees of Detroiter, or dealers in Detroiter mobile homes.

Three of the single donees were minors at the time of the gifts. Petitioners' daughter became 21 on May 21, 1964, and received her certificate for 500 shares on September 3, 1964. Sullivan's older son became 21 on April 19, 1963, and received his certificate for 500 shares on May 24, 1963. Sullivan's younger son, born June 1, 1945, had not received his certificate for 500 shares from the bank as of the bank's May 1, 1966, accounting.

In October 1961, Melvin decided to make further gifts of Detroiter stock to some of the 1960 donees. Because of the relatively small amount of stock involved, Sullivan advised Melvin that the stock could be given directly to the donees without violating SEC requirements. Melvin informed the donees of the proposed gifts. Two of the donees, Trask and Campbell, requested that their stock be handled in the same manner as their 1960 gifts. Accordingly, on the transfer of the stock by Melvin, all but two of the certificates were delivered directly to the intended donees. The remaining two certificates, both being joint certificates, were issued in the names of John F. Trask and M. Jeanne Trask, and William D. Campbell, Jr., and Marilyn C. Campbell, respectively, delivered to the bank, and held in accordance with the appropriate 1960 gift instruments. Only these latter two gifts of 1,000 shares each are in issue for 1961. On the date of the transfers of these shares, the fair market value was $10 per share.

Manufacturers National Bank was also a transfer agent for Detroiter stock, but its transfer department was not aware of the agreements. The bank charged the donees a flat annual fee of $10 for each single donee and $20 for each pair of joint donees. The fee so charged was equal to its usual flat minimum charges for escrow accounts. The bank's usual trust fees are based on a percentage of income and/or a percentage of the value of the corpus, with a usual minimum annual fee of $250.

All dividend income was in fact paid by Detroiter directly to the donees.

Respondent determined that only the right to receive income for 10 years under each of the agreements constituted a present interest and, accordingly, determined a deficiency in gift tax for each of the petitioners based on the assertion that petitioners were entitled to the annual exclusion only with respect to the actuarial value of the respective income interests.

## OPINION

There is no issue herein as to whether petitioners in fact made gifts nor as to the valuation of the subject matter of the gifts. The question before us is simply whether the gifts encompassed a future interest so that petitioners are limited in their right to the annual exclusion provided by section 2503(b)[2] to that accorded them by respondent, viz, with respect to the actuarial value of the right to income for 10 years. In the event that we decide that there was an element of "future interest," we must face the subsidiary issues whether the gifts in 1961 should be similarly categorized (or should be considered as voluntary transfers by the donees after the gift) and whether the gifts in 1960 to petitioners' minor daughter and Sullivan's two minor sons met the requirements of section 2503(c).

Petitioners urge that the so-called Agreement of Trust created no more than a simple contractual restraint on alienation and that this is not enough to give rise to a "future interest in property." Respondent, on the other hand, contends that the "Agreement of Trust" is precisely what it purported to be and that, even if this is not the case, the donees still could not obtain "use, possession or enjoyment" of the shares until the expiration of 10 years. As a consequence, he maintains that each donee's interest in corpus was a "future interest in property" under section 2503(b) and section 25.2503-3(a), Gift Tax Regs.[3]

With respect to the proper characterization of the underlying arrangement, the agreement herein was designated as an "Agreement of Trust," the petitioners were referred to as Grantors, the bank as Trustee, and each donee as beneficiary, and the word "trust" is used frequently throughout the instrument.

---

[2] SEC. 2503. TAXABLE GIFTS.

(b) EXCLUSIONS FROM GIFTS.—In the case of gifts (*other than gifts of future interests in property*) made to any person by the donor during the calendar year 1955 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for purposes of subsection (a), be included in the total amount of gifts made during such year. Where there has been a transfer to any person of a present interest in property, the possibility that such interest may be diminished by the exercise of a power shall be disregarded in applying this subsection, if no part of such interest will at any time pass to any other person. [Emphasis added.]

[3] Sec. 25.2503-3. Future interests in property.

(a) * * * "Future interests" is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commerce in use, possession or enjoyment at some future date or time. * * *

On the other hand, the certificates were issued in the name of each donee and not that of the bank, dividends were payable to and in fact were paid directly to each donee, and each donee had the full right to vote the shares. Moreover, the agreements are conspicuously silent on conferring or imposing upon the bank the normal duties of collecting income or of managing, investing, and reinvesting the corpus—the usual hallmarks of a trustee. This difference in responsibility is further reflected by the fact that the bank keyed its charges to those applicable to escrow accounts rather than imposing the usual trust fees.

We are not bound over to a tyranny of labels. "Mere forms of instruments, of course, and the use of words 'trust' and 'trustee' cannot be depended upon in determining whether or not a trust is in reality created. The transaction itself must be scrutinized." See *Morsman* v. *Commissioner*, 90 F. 2d 18, 23 (C.A. 8, 1937), affirming 33 B.T.A. 800 (1935); *Prudence Miller Trust*, 7 T.C. 1245 (1946); *James T. Pettus*, 45 B.T.A. 855 (1941); *Edward H. Heller*, 41 B.T.A. 1020, 1033 (1940).

Nor does the case turn on a question of title. The fact is that title passed from the petitioners. As we read the then applicable Michigan law, upon which respondent so heavily relies, since the shares were registered in the name of each donee, title passed to him upon delivery of the certificates to the bank as agent for the donees. Mich. Comp. Laws ch. 441, sec. 441.1 and 441.25 (1948), repealed by Pub. Acts 1962, Act 174, effective Jan. 1, 1964. Even if it be assumed that title passed to the bank rather than to the donee, this in and of itself does not necessitate the conclusion that a trust was created, as respondent himself has recognized in another context. Cf. Rev. Rul. 55–469, 1955–2 C.B. 519; Rev. Rul. 58–65, 1958–1 C.B. 13.

Whether the arrangement is characterized as a trust or, in petitioner's words, a "simple contractual restraint on alienation," we must still determine if, aside from the right to income from the shares, each donee had only a "future interest in property."

The Supreme Court has indicated that the critical test is whether there has been a postponement of the rights of the donees to use, possess, and enjoy the property. See *Ryerson* v. *United States*, 312 U.S. 405 (1941), and *United States* v. *Pelzer*, 312 U.S. 399 (1941), approving the respondent's regulations to this effect, now sec. 25.2503–3(a), Gift Tax Regs. In *Fondren* v. *Commissioner*, 324 U.S. 18, 20–21 (1945), the Court phrased the test as follows:

It is not enough to bring the exclusion into force that the donee has vested rights. In addition he must have the right presently to use, possess or enjoy the property. These terms are not words of art, like "fee" in the law of seizin, *United States* v. *Pelzer, supra,* [312 U.S. 399] at 403, but connote the right to substantial present economic benefit. The question is of time, not when title vests, but when enjoyment begins. Whatever puts the barrier of a substantial

period between the will of the beneficiary or donee now to enjoy what has been given him and that enjoyment makes the gift one of a future interest within the meaning of the regulation.[4]

In *Ryerson* v. *United States, supra,* the Court had this to say about a joint power of termination of a trust (312 U.S. 405, 408–409) :

here the joint power was not for the joint benefit of the donees of the powers. Its exercise could only operate for the benefit of each to the extent of one-half of the trust property and then only in the event that both agreed to unite in its exercise. In any case use and enjoyment of any part of the trust fund by either was postponed until such time as both joined in the exercise of such power. The interests granted to the trustees upon their termination of the trust * * * were "future interests" * * *

Cf. *Spyros P. Skouras,* 14 T.C. 523 (1950), affd. 188 F. 2d 831 (C.A. 2, 1951) ; *Jennie Brody,* 19 T.C. 126, 131 (1952) ; see also *Howe* v. *United States,* 142 F. 2d 310, 312 (C.A. 7, 1944), certiorari denied 324 U.S. 841 (1945).

The ability of the donees herein to realize on the capital investment represented by the shares was severely circumscribed. Although they had the right to vote, their shares represented a distinct minority which could easily be outvoted. Absent a breach of fiduciary duty by the officers, directors, or other stockholders, if they were dissatisfied with the operations or profitability of the corporation or the prospective value of their shares, the normal recourse of the shareholder—namely, the right to dispose of his investment—was not open to them. Moreover, it is at least open to question whether, under the agreements, distributions in cash or property by way of liquidating dividends or return of capital would have inured directly to the donees or whether such distributions would have been turned over to the bank to be held by it until the 10-year period had expired. Thus, aside from the right to income, which respondent has allowed as a "present interest," or a showing of special circumstances, which would have justified an exercise of the power of discretionary distribution by the bank, the donees were locked into the capital investment for the specified term.[5]

The instant situation is clearly distinguishable from that involving a spendthrift provision on the right of a trust beneficiary to receive income currently which has been held not to preclude a finding of a "present interest." *Charles* v. *Hassett,* 43 F. Supp. 432 (D. Mass. 1942) ; *Elizabeth H. Fisher,* 45 B.T.A. 958 (1941), affd. 132 F. 2d 383 (C.A. 9, 1942) ; Rev. Rul. 54–344, 1954–2 C.B. 319. Such a person

---

[4] In view of this approach, we need not concern ourselves with the question whether a restraint on alienation such as existed herein constituted a "future interest" under local property law. See Simes and Smith, Law of Future Interests, sec. 1139 *et seq.* (2d ed. 1956) ; O'Neal, "Restrictions on Transfer of Stock in Closely Held Corporations: Planning and Drafting," 65 Harv. L. Rev. 773, 777 *et seq.*

[5] There is no question that 10 years is a "substantial period." Cf. *Estate of Louise Jardell,* 24 T.C. 652 (1955), which so held with respect to a 3-month period.

is fully able to receive and, indeed, is required to be paid, currently all of the income of the trust. Only his right to anticipate such receipt by sale or other disposition is proscribed. Here the donees did not have the right or power to reach their capital investment to any degree.

We think that there was a sufficient "barrier of a substantial period between the will of the * * * donee now to enjoy what has been given him and that enjoyment" to require us to hold that each gift herein constituted a "future interest in property" so that petitioners are not entitled to the annual exclusions under section 2503(b) beyond the limit conceded by respondent.

Two subsidiary issues remain. Three of the 1960 gifts were to minors. The instrument of transfer contained the following language relevant to the minors:

> Each trust herein created shall continue for a period of ten years, and shall terminate the first day of the first month following the tenth (10th) anniversary of the creation of the said trust:
>
> PROVIDED, HOWEVER, that in the event a beneficiary shall be a minor then said trust shall continue until said beneficiary shall have attained his or her twenty-first (21st) birthday.

Petitioners contend that the proviso comes into effect if the donee is a minor on the date of transfer so that the proviso shortens the waiting period if the minor attains 21 before the end of the 10-year period with the result that section 2503(c)[6] is applicable. Respondent, on the other hand, contends that the proviso only comes into effect if, at the end of the 10-year period, the donee is still a minor.

Each of the parties contends that the literal language supports its position. Petitioner finds support in the fact that the bank turned over the shares to two of the three minors on their attaining 21 rather than waiting for the expiration of the 10-year period. The third minor had not attained 21 as of the date of the most recent information supplied by the bank. Petitioner insists that this contemporaneous interpretation by the bank is significant. Petitioner also points to a change in the placing of the word "then" between the original

---

[6] SEC. 2503. TAXABLE GIFTS.

(c) TRANSFER FOR THE BENEFIT OF MINOR.—No part of a gift to an individual who has not attained the age of 21 years on the date of such transfer shall be considered a gift of a future interest in property for purposes of subsection (b) if the property and the income therefrom—

(1) may be expended by, or for the benefit of, the donee before his attaining the age of 21 years, and

(2) will to the extent not so expended—

(A) pass to the donee on his attaining the age of 21 years, and

(B) in the event the donee dies before attaining the age of 21 years, be payable to the estate of the donee or as he may appoint under a general power of appointment as defined in section 2514(c).

draft form and the instruments as finally executed and argues that we must presume an intentional change in meaning. We do not agree. The action of the bank has, we think, at most a neutral bearing, since the minors were children of the donors and the decision to turn over the shares to them could have represented no more than a de facto subsequent agreement by the bank and the donors rather than a meaningful interpretation of the instrument. The juxtaposition of the word "then" in the earlier draft was in a different context, dealing with the distrubution of accumulated income, and, in any event, there was no testimony as to the reason for this particular change. Moreover, it seems strange indeed, given the background of petitioners' objectives, that there should be a discrimination in favor of early distribution to minors. We think the key to the meaning of this clause lies in the use of the word "continue." This clearly indicates that the proviso clause was to be applicable only in cases where the 10-year period expired and the donee had not yet reached the age of 21. If petitioner's interpretation had been intended, it would have been very easy to have provided that "said trust shall terminate when" instead of "said trust shall continue until." Consequently, we believe the minimum term of the arrangement was 10 years. Accordingly, the requirements of section 2503(c) have not been met. We therefore hold for respondent on this issue.

As to the 1961 gifts, our findings of fact make it clear that the *donees* were entitled to the shares without restriction. The shares given to the Trasks and the Campbells were subjected to the arrangement with the bank at *their* request, not as a condition of petitioners' gifts. Accordingly, with respect to these gifts, we hold that petitioners are entitled to the full annual exclusion under section 2503(b).[7]

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

[7] Cf. *Emil Klempner*, T.C. Memo. 1955–307.