Richard A. Herzberg v. Commissioner. M. Olga Herzberg v. Commissioner.
Herzberg v. Commissioner
Docket Nos. 3422-70, 3423-70.
United States Tax Court
T.C. Memo 1971-243; 1971 Tax Ct. Memo LEXIS 85; 30 T.C.M. (CCH) 1046; T.C.M. (RIA) 71243; September 27, 1971, Filed. Martin D. Cohen, Cohen, Rosenbaum & Scher,744 Broad St., Newark, N.J., for the petitioners. John J. O'Toole, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined the following deficiencies in petitioners' gift tax liability: Dkt.
No.
Petitioner
1966
1967
3422-70
Richard A. Herzberg
$480.68
$3,960.24
3423-70
M. Olga Herzberg
844.95
3,553.75
The sole issue is whether certain gifts in trust for the benefit of petitioners' minor daughters meet the requirements of section 2503(c) [1] so as not to be considered "future interests" for the purposes of section 2503(b). Findings of Fact Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner M. Olga Herzberg (hereinafter referred to as "Olga") is, and at all times material has been, a citizen of the United Kingdom and a resident of Far Hills, New Jersey, including the date on which the petition *87 herein was filed. Petitioner Richard A. Herzberg (hereinafter referred to as "Richard") has, since 1946, been married to Olga and is, and at all times material 1047 has been, a citizen of the United States and a resident of Far Hills, New Jersey, including the date on which the petition herein was filed. Petitioners timely filed separate United States Gift Tax Returns for the calendar years 1964 to 1967, inclusive, with the district director of internal revenue, Newark, New Jersey. Deborah Marion Herzberg (hereinafter referred to as "Deborah") and Elizabeth Newman Herzberg (hereinafter referred to as "Elizabeth"), the daughters (and only children) of Olga and Richard, were born September 2, 1947 and December 15, 1949, respectively. At all times material herein, Olga's business, legal, and financial affairs within the United Kingdom were handled by an English solicitor, who had died prior to the trial herein. A New Jersey law firm advised Olga and Richard respecting their personal and business affairs within the United States. As of April 1964, Olga was a substantial shareholder of a successful British corporation, founded by her father. Commencing shortly before that time *88 and continuing until July 1964, the English solicitor and the New Jersey law firm collaborated in the development of a plan whereby trusts of such corporation's shares would be established for the benefit of Deborah and Elizabeth under circumstances which would minimize the impact of United States and United Kingdom taxes. On July 20, 1964, the English solicitor sent Richard a draft of a "Voluntary Settlement" to be established by Olga for the benefit of Deborah and Elizabeth. At Richard's request, the New Jersey law firm reviewed the document and discussed their observations and recommendations respecting it at a conference with Richard held on or about August 18, 1964. At Richard's request, the New Jersey law firm on that same day communicated their recommendations in writing directly to the English solicitor and, among other things, specifically referred to the need for a provision limiting the expenditure of trust income to luxury items, a provision for the distribution to each daughter of any unexpended income upon her reaching the age of 21 or to her estate if she died prior thereto, and a provision for the direct distribution of all trust income earned thereafter. On August 24, 1964, the *89 English solicitor responded to the communication from the New Jersey law firm, stating that the draft "Voluntary Settlement" would be revised and that the final form of the document could be agreed upon at a meeting between the lawyers expected to take place the following month. On September 29, 1964, a conference was held at the offices of the New Jersey law firm, attended by a partner of that firm, Olga, Richard, and the English solicitor. Another partner in the New Jersey law firm, who handled tax matters, participated briefly in the conference. Prior to the conference, both petitioners reviewed the final draft of the settlement. At the conference, the English solicitor assured all present that he had taken the recommendations of the New Jersey law firm into account when he prepared the final draft of the settlement. Thereupon, on September 29, 1964, at the offices of the New jersey law firm, Olga executed a trust agreement for the benefit of Deborah and Elizabeth, the text of which is as follows: THIS SETTLEMENT is made the 29th day of September, 1964 BETWEEN MARION OLGA HERZBERG of Roxiticus Road, Far Hills, New Jersey in the United States of America (hereinafter called *90 "the Settlor") of the one part and JOHN ARTHUR HURLSTONE HORTIN of 43/44, Albemarle Street in the County of London Solicitor and STANLEY AUGUST ROSTON of 50 Aubrey Walk W. 8 in the County of London (hereinafter called "the Trustees") of the other part. WHEREAS: - 1. THE SETTLOR has two children namely: - (a) Deborah Marion Herzberg (hereinafter called "Deborah") who was born on the 2nd day of September, 1947 and (b) Elizabeth Newman Herzberg (hereinafter called "Elizabeth") who was born on the 15th day of December 1949. 2. WITH a view to the Settlement intended to be hereby made the Settlor has transferred into the joint names of the Trustees the sum of One hundred pounds and it is apprehended that the Settlor may hereafter cause to be paid or transferred to the Trustees further money investments and other property to be held upon the trusts hereof. 3. THE SETTLOR is desirous of declaring the trusts for the benefit of her said children as are hereinafter contained. NOW in consideration of the natural love and affection of the Settlor for her said children and in pursuance of such her desire THIS DEED 1048 WITNESSETH as follows: - [1) THE Trustees shall stand *91 possessed of the said sum of One hundred pounds together with any other property cash or investments which the Settlor may hereafter transfer to the Trustees UPON TRUST to sell the same and to invest the net moneys arising from such sale in the name of and under the control of the Trustees in any of the investments hereby authorized with power from time to time to change such investments for other of a like nature. [2) THE Trustees shall stand possessed of the investments from time to time representing the net proceeds of the said property and of the net rents and profits to arise therefrom until sale UPON TRUST to divide the same into two equal parts which equal parts are hereinafter respectively referred to as "Deborah's Fund" and "Elizabeth's Fund" and which designations are apt to include all or any of the funds which may accrue to either one of the parts under the trusts hereinafter declared. (3) THE Trustees shall stand possessed of Deborah's share upon the trusts following that is to say: - (a) Until such time as Deborah shall attain the age of twenty-one years to accumulate the income thereof by way of compound interest by investing the same and the resulting income therefrom *92 in any of the investments hereby authorized and by holding the investments representing such accumulation as an accretion to and augmentation of "Deborah's Fund". (b) From and after such time as Deborah shall attain the age of twenty-one years to pay the income to Deborah until she shall attain the age of twenty-five years. (c) From and after such time as Deborah shall attain the age of twenty-five years for Deborah absolutely. (d) If and in th event that Deborah shall die under the age of twenty-five years leaving issue her surviving UPON TRUST for all or any of the children or remoter issue of Deborah (such remoter issue to be born within twenty-one years of the death of the last survivor of the issue of Deborah living at her death) who shall attain the age of twenty-one years and if more than one in equal shares per stirpes absolutely. (e) In so far as no person shall attain a vested interest under the trusts declared in Clauses 3(a), (b), (c) or (d) hereof or by exercise of any of the powers and provisions conferred by Clause 5 hereof upon the trusts as are herein declared of "Elizabeth's Fund". (4) THE Trustees shall stand possessed of Elizabeth's Fund upon the same *93 trusts as are declared in Clause 3 hereof but as if the name "Elizabeth" were substituted for the name "Deborah" in subClauses (a), (b), (c) and (d) thereof and the name "Deborah" were substituted for the name "Elizabeth" in subClause (e) thereof. (5) NOTWITHSTANDING any of the trusts hereinbefore declared the Trustees if in their absolute discretion they shall think fit may until such time as Deborah and Elizabeth shall respectively attain the age of twenty-one years apply the income of the whole or part of her or their respective funds for her or their respective maintenance advancement or benefit - PROVIDED ALWAYS and it is hereby declared that in no event shall any part of such income be used in discharge of the Settlor's legal duty to support her said children by the provisions of necessities and so that any such payments as aforesaid shall be for nonessential purposes (in the legal sense) such as travel, private education at secondary college and graduate levels or other luxury of any type or description. (6) IN execution of any of the trusts or powers herein declared or conferred the Trustees may in reference to any property or the proceeds of sale of any property from time *94 to time subject to the trusts hereof or any share therein and as between the parties interested exercise the powers of appropriation and other incidental powers conferred upon personal representatives by the Administration of Estates Act 1925 Section 41 without any of the consents requisite by that Section and every decision allotment setting apart and valuation made in exercise of the said powers shall be as binding upon all persons then or thereafter to be beneficially interested in the premises as if the same had been made by a Court of competent jurisdiction. (7) THE Trustees may invest any property or the proceeds of sale of any property subject to the trusts hereof in any investment of whatsoever nature and wheresoever and whether authorized by law for Trustees or not which the Trustees shall from time to time in their absolute discretion select. (8) ANY Trustee hereof being a Solicitor or other person engaged in any profession or business may charge and be paid for any work done by him or his firm in the execution of the trusts hereof. The signatures of Olga and Hortin were witnessed in Newark, New Jersey. The signature of Roston was affixed to the settlement and witnessed *95 in the early part of 1049 October 1964 in London, England. At all times here material, the 1964 trust for the benefit of Deborah and Elizabeth was held and administered in London, England, by Hortin and Roston, as trustees thereof. The following schedule shows the amounts transferred to the 1964 trust by Olga for the benefit of Deborah in each of the calendar years 1964 to 1967, inclusive: Amount trans-
Calendar
ferred to trust
year
for Deborah
1964
$34,632.50
1965
5,826.50
1966
5,826.50
1967
74,865.00
In each of the calendar years 1964 to 1967, inclusive, Olga transferred to the 1964 trust for the benefit of Elizabeth amounts identical to those set forth above with respect to Deborah. In each of these years, all of the net income of the Elizabeth and Deborah trusts, after payment of administrative expenses and United Kingdom income taxes, was transmitted by Hortin and Roston to Olga for the benefit of Deborah and Elizabeth. Upon receipt of all such income, Olga turned over the full amounts thereof to Richard. Deborah and Elizabeth filed individual United States income tax returns for each of the years 1964 to 1968, inclusive, in which returns *96 each reported her respective share of the trust net income. On or about March 15, 1965, Richard established a checking account (Account No. 002-2769-2) in the First National Iron Bank of New Jersey, Morristown, New Jersey, in the name of "Richard A. Herzberg in trust for Deborah M. Herzberg." For the years 1965 to 1968, Richard deposited in the account all of the income received from the trustees in England for the benefit of Deborah. From time to time during this period, Richard withdrew certain amounts from such account in payment of educational and related expenses of Deborah. On August 20, 1968, Richard withdrew the sum of $2,150 to purchase 50 shares of Southeastern Bancorporation stock in his name as custodian for Deborah. In March 1965, Richard established a checking account in the First National Iron Bank of New Jersey for the benefit of Elizabeth and, in all material respects, made deposits to and withdrawals from such account in the same fashion as had been done in the case of Deborah. On August 20, 1968 Richard wrote a letter to a stockbroker through whom the 50 shares of Southeastern Bancorporation had been purchased. Richard pointed out, among other things, that *97 Deborah was about to become 21 years of age and that the stock purchased in Richard's name as custodian for Deborah should be transferred to Deborah's name alone. Richard's request was complied with approximately two months later. The delay was occasioned by internal problems affecting the stockbroker's firm. On August 28, 1968, Account No. 002-2769-2, having a balance of $2,252.05, was closed out and such amount was transferred to a newly established account (No. 081-0159-0) at the First National Iron Bank of New Jersey in the name of "Miss Deborah M. Herzberg." The 50 shares of Southeastern Bancorporation and the $2,252.05 balance at the First National Iron Bank of New Jersey represented al of the income of the Deborah trust which, as of September 2, 1968, had not actually been expended for Deborah's benefit during her minority. The steps taken by Richard immediately prior to Deborah's 21st birthday were motivated by Richard's understanding that, under the terms of Olga's settlement for the benefit of their daughters, any income earned by the trust not actually distributed to a beneficiary during minority had to be then distributed. For the same reasons, shortly before Elizabeth's *98 21st birthday, Richard took identical steps to have trust income transferred directly to her name. In the gift tax returns which she filed for the years 1964 to 1967, inclusive, Olga reported all of the aforementioned gifts to Deborah and Elizabeth. In computing her taxable gifts for each such year, Olga claimed one $3,000 annual exclusion with respect to the gift to Deborah and a second $3,000 annual exclusion with respect to the gift to Elizabeth. In the gift tax returns which he filed for each of the years 1964 to 1967, inclusive, Richard consented to have Olga's gifts for each such year to Deborah and Elizabeth treated as being made, to the extent of one-half thereof, by himself, and, in computing his taxable gifts for each such year, Richard claimed one $3,000 annual exclusion with respect to Olga's gift to Deborah and a second $3,000 annual exclusion with respect to Olga's gift to Elizabeth. Opinion Petitioners concede that the corpora of the trusts are future interests and are 1050 therefore not entitled to the annual gift tax exclusion contained in section 2503. [2] Respondent concedes that, for the purposes of this case, the income interests may properly be considered *99 separately ( James T. Pettus, Jr., 54 T.C. 112, 121 (1970); Arlean I. Herr, 35 T.C. 732 (1961), affd. 303 F. 2d 780 (C.A. 3, 1962)) and that, if those income interests qualify as present interests, their value is more than sufficient to entitle petitioners to the full annual exclusion. Both parties agree that the issue to be resolved has a narrow focus: do the income interests of Deborah and Elizabeth meet the three safe harbor requirements provided by section 2503(c)? See footnote 2, supra. *100 There are difficulties in petitioners' position as to each requirement, but, for the purposes of decision herein, we need direct our attention only to the requirement of section 2503(c)(2)(B), namely, that, in the event the donee dies before attaining the age of 21 years, any unexpended income must be payable to the estate of the donee or as he may appoint under a general power of appointment. Under paragraph 3(a) of the trust agreement, the trustees are directed to accumulate income during minority and to hold "such accumulation as an accretion to and augmentation of 'Deborah's Fund.'" Paragraph 3(d) provides that if Deborah dies under the age of 25 leaving issue, her share is to be held upon further trust for such issue. Paragraph 3(e) provides that if no person attains a vested interest in Deborah's share, e.g., in the event that Deborah died without issue, that share was to be added to "Elizabeth's Fund." Paragraph 4 applied the foregoing provisions mutatis mutandis to Elizabeth's share. In light of these specific provisions, we have no choice but to hold that the instrument herein fails to satisfy the requirement of section 2503 (c)(2)(B). Morris M. Messing, 48 T.C. 502, 514-515 (1967); *101 Bernic C.clinard, 40 T.C. 878, 881 (1963); Bonnie M. Heath, 34 T.C. 587, 591 (1960). Petitioners' reliance on Jacob Konner, 35 T.C. 727 (1961), and Carl E. Weller, 38 T.C. 790 (1962), is misplaced. In Konner, there was a specific provision for the disposition of accumulated income which clearly satisfied the requirements of section 2503(c)(2)(B); the result in that case turned on the Court's determination of the relevant income interest for purposes of applying section 2503(c)(2)(B). In Weller, the instrument did not provide for an amalgam of principal and accumulated income, as does the within instrument. Principal and income were dealt with separately and the dispositive provision in the event of death was limited to "principal." See 38 T.C. at 809. Under these circumstances, we were able, on the basis of the record before us in that case, to find that, in the event of death, the accumulated income was to be disposed of in accordance with the mandate of section 2503(c)(2)(B). Thus, Konner and Weller are clearly distinguishable. [3]
*102 Petitioners seek to avoid the impact of the foregoing analysis on the basis of evidence as to the intention of Olga. Assuming without deciding that such evidence is both competent and relevant, we hold that it is insufficient to satisfy petitioners' burden of proof. One contention is that Olga intended that any accumulated income should be paid to the donee upon attaining the age of 21. Aside from the fact that such contention flies in the face of the augmentation provision of paragraph 3(a), it does not go far enough. At most, it indicates the disposition to be made of such income if the donee lived. It does not deal with the disposition to be made in the event that the beneficiary died. In this connection, we note that the "expert" in English law, whom 1051 petitioners called as a witness, specifically confirmed this hiatus and stated that, in the event of the death of a donee, accumulated income, if any, would have been paid to her issue. Nor can petitioners draw any sustenance in this regard from the fact that the income was remitted currently by the trustees to Olga and transferred by her to Richard, who, in turn, established trust accounts for the benefit of Deborah *103 and Elizabeth and transferred the accounts and the proceeds thereof to them when they reached the age of 21. Cf. Laura M. Hutchinson, 47 T.C. 680, 688-689 (1967). An alternative contention of petitioners urges us to hold that the trust instrument is ambiguous and therefore should be construed to conform to what they claim was Olga's clear intent. Initially, as we have already held, we do not believe that the trust instrument is ambiguous. But even if we were to accede to petitioners' blandishments in this regard, we cannot find, on the basis of the record before us, that Olga intended to favor the estate of a deceased daughter over that daughter's issue or her sister in default of issue. We think that, at best, Olga had a general intention to minimize British and American tax consequences flowing from the establishment of the trusts and she relied on her lawyers to do whatever was necessary in this regard. Such a general intent, even though coupled with her apparent assumption that what should be done would be done, is an insufficient basis for enabling us to ignore the normal rule that where a trustee is not under a duty to pay income to or for the benefit of a beneficiary, *104 but is authorized to do so in his discretion, the personal representatives of a deceased beneficiary are not entitled to the accrued, much less the previously accumulated, income (see Stoffels v. Stoffels, 18 N.J. Super. 300, 304-305, 86 A. 2d 806, 808 (Ch. Div. 1952), cited with approval in Tobler v. Moncrief, 72 N.J. Super. 48, 178 A. 2d 105 (Ch. Div. 1962); II Scott, Trusts 1017, 1027 (1967)) and to rewrite the specific provisions of the instrument before us. See Morris M. Messing, supra, 48 T.C. at 515. In light of our conclusion that neither of the conditions set forth in section 2503 (c)(2)(B) has been satisfied, we hold that the income interests involved herein were future interests within the meaning of section 2503(b). Under these circumstances, we need not concern ourselves with respondent's further contention that the gifts in issue run afoul of the other safe harbor requirements of section 2503(c). Decisions will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended.↩
2. SEC. 2503. TAXABLEGIFTS. * * * (b) Exlusions from Gifts. - In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year * * *, the first $3,000 of such gifts to such person shall not * * * be included in the total amount of gifts made during such year. * * * (c) Transfer for the Benefit of Minor. - No part of a gift to an individual who has not attained the age of 21 years on the date of such transfer shall be considered a gift of a future interest in property for purposes of subsection (b) if the property and the income therefrom - (1) may be expended by, or for the benefit of, the donee before his attaining the age of 21 years, and (2) will to the extent not so expended - (A) pass to the donee on his attaining the age of 21 years, and (B) in the event the donee dies before attaining the age of 21 years, be payable to the estate of the donee or as he may appoint under a general power of appointment as defined in section 2514(c). [Emphasis added.]↩
3. In Martha J. Heidrich [Dec. 30,647], 55 T.C. 746↩ (1971), on appeal (C.A. 5, Aug. 9, 1971), the applicability of section 2503(c)(2)(Be was not in issue.